**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

TIMOTHY S. BARKOVIC,

    Plaintiff,

v.                                                               Case No. 10-14145

JUSTICES OF THE MICHIGAN SUPREME
COURT, et al.,

    Defendants.
                                                      /

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION AND GRANTING DEFENDANTS' MOTION TO DISMISS**

Pending before the court are Plaintiff's motion for a preliminary injunction, which seeks to restrain Defendants from enforcing Michigan Rule of Professional Conduct 6.5(a) against Plaintiff, and Defendants' motion to dismiss. The court has considered the briefs and heard argument on December 7, 2010. In accordance with the parties' agreement, the court consolidated the hearing with a trial on the merits. *See* Fed. R. Civ. P. 65(a)(2). For the reasons that follow, the court will abstain from exercising jurisdiction over this matter, and accordingly will deny Plaintiff's motion and grant Defendants' motion.

**I. BACKGROUND**

Nearly all of the material facts of this case are not in dispute. On three separate occasions in 2008, Plaintiff used what might be described as foul language in a courthouse, but not during a court proceeding. Specifically, during a break in a trial, Plaintiff called a detective a "punk"; in the lobby of a courthouse, Plaintiff told another detective that he was "a dirty cop and [Plaintiff] hoped [the detective] would be shot in a

drug house in Detroit"; and in a prosecutor's office in a courthouse, Plaintiff called a third detective an "asshole" and a "son of a bitch," and referred to an attorney who was present as a "fucking bitch" and also a "white bitch."  (Compl. ¶ 14 n.1 (internal quotation marks omitted).)  As a result, the Michigan Attorney Grievance Commission ("AGC") charged Plaintiff with violations of Michigan Rule of Professional Conduct 6.5(a), among others.  Because the Michigan Supreme Court has held that the Michigan Attorney Discipline Board[1] ("ADB") may not declare a Rule unconstitutional, *Grievance Adm'r v. Fieger*, 719 N.W.2d 123, 138 (Mich. 2006), Plaintiff filed a complaint for superintending control with the Michigan Supreme Court so that it could address the constitutional arguments Plaintiff raises here.  (Compl. ¶¶ 21-22.)  In a 4-3 decision, the court denied the complaint.  *Barkovic v. Attorney Discipline Bd.*, 788 N.W.2d 11 (Mich. 2010).

      Plaintiff then filed this suit on October 15, 2010, along with a motion for a temporary restraining order and preliminary injunction, alleging that Rule 6.5(a) is overbroad and vague, and therefore an unconstitutional restriction of free speech under the First Amendment, and further alleging that the enforcement of Rule 6.5(a) is contrary to the due process of law guaranteed by the Fourteenth Amendment.  Finding no immediate harm because Plaintiff's hearing before the ADB panel is not scheduled to take place until December 20, 2010, this court denied the motion for a temporary

---

      [1] In Michigan, when an attorney is suspected of misconduct, the Attorney Grievance Commission ("AGC") first investigates the allegations.  If the AGC finds that the allegations can be substantiated, it files a formal complaint with the ADB, which convenes three-attorney panels to try the case.  The panel's decision may be reviewed by the ADB, and any appeal of the ADB's decision is taken to the Michigan Supreme Court.  *See* Mich. Ct. R. 9.108-.122.

restraining order on October 20, 2010. Defendants moved to dismiss the case on November 30, 2010, under Federal Rule of Civil Procedure 12(b)(1) and (6).

## II. STANDARD

### A. Motion for a Preliminary Injunction

In deciding whether to issue a preliminary injunction, the district court weighs four factors: "(1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief." *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) (quoting *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 888 (6th Cir. 2000)) (internal quotation marks omitted).

### B. Motion to Dismiss

A defendant may move to dismiss a case for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). To obtain dismissal of a case for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the complaint must fail to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations omitted). Therefore, under the pleading standard outlined in *Twombly*, the court assumes the facts recited in the complaint are true, "construe[s] the

complaint in the light most favorable to plaintiff," and determines whether a plaintiff has stated a plausible claim. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (internal quotation marks and citations omitted).

### III. DISCUSSION

As the parties agree to the essential facts of this case, the court is concerned here only with questions of law.[2] The sole Michigan Rule of Professional Conduct at issue in this case, Rule 6.5(a), provides:

> A lawyer shall treat with courtesy and respect all persons involved in the legal process. A lawyer shall take particular care to avoid treating such a person discourteously or disrespectfully because of the person's race, gender, or other protected personal characteristic. To the extent possible, a lawyer shall require subordinate lawyers and nonlawyer assistants to provide such courteous and respectful treatment.

Plaintiff challenges enforcement of the rule against him, arguing that the rule is both overbroad and vague in contravention of the First Amendment. He also asserts that the Michigan Supreme Court's decision in *Grievance Adm'r v. Fieger*, 719 N.W.2d 123 (Mich. 2006), prevents him from raising the constitutionality of the Rule in the disciplinary proceeding against him. He frames this alternatively as a procedural due process argument, under the Fourteenth Amendment, (Pl.'s Mot. 17-18), and also as a Sixth Amendment right to present a defense, contending that attorney disciplinary actions are "quasi-criminal" proceedings, (Pl.'s Reply 2 (citing *In re Ruffalo*, 390 U.S. 544 (1968).)

---

[2] The parties dispute whether, in practice, the Michigan Attorney Discipline Board ("ADB") may construe the Rules in terms of constitutional principles, even if the ADB may not overrule any Rule. This factual issue will be addressed below.

4

Defendants in response and in their motion advance a handful of procedural reasons why this court cannot or should not grant the relief Plaintiff desires, and they also attack the merits of Plaintiff's case. Because the court finds it must abstain from extending jurisdiction to this matter pursuant to the doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny, it has no occasion to consider Defendants' alternative contentions, nor the underlying merits of Plaintiff's constitutional claims.

In *Younger*, the Supreme Court instructed that a federal court may not enjoin a criminal prosecution in state court. 401 U.S. at 40-41. That decision was rooted in concerns of equity, comity, and federalism; while *Younger* did not erode a federal court's Article III jurisdiction over a matter, it held that in certain circumstances, a court should not exercise that jurisdiction. *See id.* at 43-45, 52. Three primary exceptions to abstention were indicated in *Younger*, and have been widely recognized since: bad faith prosecution, harassment, and flagrant unconstitutionality. *Id.* at 49, 53-54; *Am. Family Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328, 335 (6th Cir. 2007).

In the years following *Younger*, the Court extended that abstention doctrine beyond criminal cases, to proposed injunctions of civil and state administrative proceedings, *see Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975); *Gibson v. Berryhill*, 411 U.S. 564 (1973), and to state attorney disciplinary hearings, *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982). *Middlesex* describes the three-part inquiry for a district court to apply in deciding whether to abstain: 1) "[D]o state bar disciplinary hearings within the constitutionally prescribed jurisdiction of the State Supreme Court constitute an ongoing state judicial proceeding"?; 2) "[D]o the proceedings implicate important state interests"?; and 3) "[I]s there an adequate

opportunity in the state proceedings to raise constitutional challenges"? 457 U.S. at 432. The Court there answered all three in the affirmative and held that the federal court should have abstained. *Id.* at 432-37.

The United States Supreme Court has described, in dicta, process sufficient to satisfy the final *Middlesex* prong. In *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619 (1986), the Court applied *Younger* to an administrative proceeding where a religious school sought to enjoin the Ohio Civil Rights Commission from adjudicating a sex discrimination action brought by a former teacher, on the grounds that the decision to terminate that teacher violated the Free Exercise and Establishment Clauses of the First Amendment. 477 U.S. at 621-22. In addressing the adequacy of the opportunity to raise constitutional challenges, the Court wrote:

> Dayton also contends that the administrative proceedings do not afford the opportunity to level constitutional challenges against the potential sanctions for the alleged sex discrimination. In its reply brief in this Court, the Commission cites several rulings to demonstrate that religious justifications for otherwise illegal conduct are considered by it. Dayton in turn relies on a decision of the Supreme Court of Ohio, in which that court held that a local zoning commission could not consider constitutional claims. But even if Ohio law is such that the Commission may not consider the constitutionality of the statute under which it operates, it would seem an unusual doctrine, and one not supported by the cited case, to say that the Commission could not construe its own statutory mandate in the light of federal constitutional principles. In any event, it is sufficient under *Middlesex* that constitutional claims may be raised in state-court judicial review of the administrative proceeding. Section 4112.06 of Ohio Rev. Code Ann. (1980) provides that any "respondent claiming to be aggrieved by a final order of the commission . . . may obtain judicial review thereof." Dayton cites us to no Ohio authority indicating that this provision does not authorize judicial review of claims that agency action violates the United States Constitution.

*Id.* at 629 (citations omitted).

The Sixth Circuit has applied *Younger* and *Middlesex* in a line of cases addressing abstention in the setting of actions seeking to enjoin attorney disciplinary hearings in Michigan. In *Fieger v. Thomas*, 74 F.3d 740 (6th Cir. 1996), the Sixth Circuit relied on *Middlesex* in reversing a district court's ruling on the merits in a plaintiff's challenge to Michigan attorney disciplinary proceedings, finding that the district court should have abstained. 74 F.3d at 742. The AGC filed a complaint against the plaintiff alleging violations of Rules 3.5(c), 8.2(a), and 8.4(a)-(c). *Id.* The district court declined to abstain and determined that the challenged rules were, in fact, constitutional. *Id.* at 743. The Sixth Circuit held the Michigan proceedings were "judicial in nature for purposes of *Younger* abstention," implicated important state interests, and provided an adequate opportunity to raise constitutional challenges. *Id.* at 744-49.

The court relied on the *Dayton Christian Schools* passage cited above in its holding in *Thomas* that the Michigan attorney disciplinary system provides an adequate opportunity for review of constitutional claims. 74 F.3d at 747-50. The court also observed that an order of the ADB is subject to judicial review, and found, importantly, the analysis is not altered by whether that review is mandatory or discretionary.[3] *Id.* at 748-49.

In *Fieger v. Michigan Supreme Court*, No. 06-11684, 2007 WL 2571975 (E.D. Mich. Sept. 4, 2007), a district court held Rules 3.5(c) and 6.5(a) of the Michigan Rules

---

[3] *Dayton Christian Schools* can be read to say that appellate review is sufficient to afford an adequate opportunity only when the appeal is as of right, or alternatively, appellate review is sufficient even if the appeal is discretionary. Because *Thomas* states this distinction is immaterial, it is unnecessary for the court to interpret the Supreme Court's use of the word "may" in the statement, "it is sufficient under *Middlesex* that constitutional claims *may* be raised in state-court judicial review." *See* 477 U.S. at 629 (emphasis added) (citation omitted).

7

of Professional Conduct unconstitutional, under the First and Fourteenth Amendments as overbroad and vague. *Michigan Supreme Court*, No. 06-11684, 2007 WL 2571975, at *1. The court at first abstained from the case while the state proceeding was pending, but after the ADB had concluded that proceeding, the court relied on *Steffel v. Thompson*, 415 U.S. 452 (1974), in holding the defendants could not alternately use abstention and standing to evade federal court review. *Id.* at *15. The court also rejected a number of other procedural arguments advanced by the defendants. *Id.* at *16-21. However, the Sixth Circuit reversed, finding the plaintiff did not have standing. *Fieger v. Michigan Supreme Court*, 553 F.3d 955, 957 (6th Cir. 2009).

The parties do not contest that *Middlesex* and *Thomas* dictate that each of the first two prongs of the *Middlesex* analysis are satisfied: the proceedings before the ADB constitute "ongoing state judicial proceeding[s]" and "the proceedings implicate important state interests." Their dispute focuses on the third prong, whether there is "an adequate opportunity in the state proceedings to raise constitutional challenges."

Plaintiff asserts there is no such adequate opportunity. He says the Michigan Supreme Court's decision in *Grievance Administrator*, taken together with its denial of superintending control in Plaintiff's pending matter before the ADB, evince an inclination by the Michigan attorney discipline system to refuse Plaintiff an opportunity to raise a constitutional claim. (Compl. ¶ 21; Pl.'s Reply 2.) Defendants respond that the procedural avenues are sufficiently wide that there is an adequate opportunity to raise constitutional challenges.

In *Grievance Administrator*, the Michigan Supreme Court held that the ADB may not declare a Rule of Professional conduct unconstitutional. 719 N.W.2d at 138. The

8

court appeared to pass on the constitutionality of Rules 3.5(c) and 6.5(a), finding the Rules were constitutional as applied to Fieger:

> Such a challenge [to the constitutionality of Rules 3.5(c) and 6.5(a)] cannot be successfully advanced here because there is no question that even the most casual reading of these rules would put a person clearly on notice that the kind of language used by Mr. Fieger would violate MRPC 3.5(c) and MRPC 6.5(a). . . .
>
> If "civility" and "courtesy" rules can *ever* satisfy constitutional muster, as we believe they can, it is beyond peradventure that the comments at issue in this case clearly violated such rules.

*See id.* at 139 (emphasis in original); *see also Michigan Supreme Court*, 553. F.3d at 957 ("[T]he Michigan Supreme Court upheld the violations and the constitutionality of the rules as applied to Fieger."). Contrary to Defendants' counsel's assertion, this is not a determination that the Rules are in fact constitutional,[4] but rather a recognition by the court that a vagueness challenge will not be heard from a plaintiff whose speech was clearly proscribed. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95 (1982) ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." (footnote omitted)). Presumably, the Michigan Supreme Court thought Fieger's speech in that case was "clearly proscribed" and thus did not reach the facial question. Nevertheless, the dicta in *Grievance*

---

[4] Moreover, it does not appear Fieger raised an overbreadth challenge to the Rules in *Grievance Administrator*, as the majority opinion does not treat that issue. *See* 719 N.W.2d at 139 (using the heading "Are MRPC 3.5(c) and MRPC 6.5(a) Unconstitutionally Vague?"). *But see id.* at 327 n.17 (Cavanagh, J., dissenting) ("I would not reach the question whether the rules are constitutionally void for vagueness or overbreadth.").

9

*Administrator* suggests the court would have found the Rules to be constitutional, although that observation is of no moment to this court's abstention analysis.

Plaintiff argues that any opportunity to present a constitutional challenge is inadequate. He asserts that because *Thomas* predates *Grievance Administrator*, and because the *Thomas* court relied in part on the fact that controlling Michigan Supreme Court precedent at the time left open the possibility that an ADB panel could adjudicate constitutional claims in finding an "adequate opportunity," 74 F.3d at 746-48, *Thomas* does not control. In particular, he says, because the ADB's panels are not permitted to declare a rule of professional conduct unconstitutional, and because in practice those panels do not construe their decisions and procedures in light of constitutional principles, and because any appeal to the Michigan Supreme Court or the United States Supreme Court is discretionary, it is possible, even likely, that his facial challenge to Rule 6.5(a) will *never* be heard.

Although the court is troubled by that possibility,[5] there can be no question about the Sixth Circuit's instruction in *Thomas*, even though dicta because *Grievance Administrator* had not been decided, that the procedures employed by the Michigan Supreme Court satisfy the third prong.

> Even if the Board could not declare a Rule of Professional Conduct unconstitutional—a proposition about which we are not convinced—"it would seem an unusual doctrine, and one not supported by the cited case[s], to say that the [Board] could not construe [the Rules of

---

[5] *See Middlesex*, 457 U.S. at 438-39 (Marshall, J., concurring) ("Here, it is unclear whether, at the time the lower courts addressed this issue, there was an adequate opportunity in the state disciplinary proceedings to raise a constitutional challenge to the disciplinary rules. Furthermore, it is unclear whether proceedings before the Ethics Committee are more accurately viewed as prosecutorial rather than judicial in nature.").

10

> Professional Conduct] in the light of federal constitutional principles." *Ohio Civil Rights Comm'n v. Dayton Christian Sch.*, 477 U.S. 619, 629, 106 S.Ct. 2718, 2724, 91 L.Ed.2d 512 (1986). The Board could, short of declaring a Rule unconstitutional, refuse to enforce it or, perhaps, narrowly construe it. We are not convinced, therefore, that Fieger is unable to raise his constitutional claims in the disciplinary proceedings. Alternatively, as the Supreme Court explained in *Dayton Christian Schools*, "it is sufficient under *Middlesex* that constitutional claims may be raised in state-court review of the administrative proceeding." *Id.* (citation omitted).

*Thomas*, 74 F.3d at 747-48 (alteration in original). As noted above, the *Thomas* court also said that the discretionary nature of any appeal does not diminish the adequacy of the opportunity. *Id.* at 748.

Moreover, the court is convinced, based on Defendants' counsel's statements at the hearing, and a close reading of *Grievance Administrator*, that even though the ADB may not declare a Rule unconstitutional, it may "construe its own . . . mandate in the light of federal constitutional principles." While the majority opinion does not explicitly authorize the ADB to construe its decisions in this way, *see* 719 N.W.2d at 138-39, the Grievance Administrator advanced that argument on appeal, *see id.* at 155 (Cavanagh, J., dissenting) ("[The Grievance Administrator]'s assertion that the board can *consider* constitutional principles in its decision-making process, but is nonetheless restricted from finding a rule unconstitutional, is an odd one indeed." (emphasis in original)). Defendants' attorney similarly adopted that position at argument:

> MS. NELSON: . . . In the *Grievance Administrator* case that he relies on, the court very clearly said only that the board as an administrative agency of the court lacks the authority or the power to hold the rule itself unconstitutional. However, recognizing the authority of the board, in its capacity as an administrative agency of the court, it is not limited in its authority and in terms of interpreting the rule, or applying the rule, or addressing its application and interpretation in the context of constitutional challenges. The Sixth Circuit also made that clear, both in the *Fieger vs. Thomas* case from several years ago and—

> THE COURT: Well, that preceded *Grievance Administrator vs. Fieger*.
>
> MS. NELSON: It did. But the Sixth Circuit recognized this concept as well, in that it indicated the ADB clearly could enforce the rule, choose not to enforce the rule, limit its application, interpret it in a narrowing or giving it a narrowing construction, which is certainly consistent with what the Michigan Supreme Court says in *Grievance Administrator*.

Thus, it appears, contrary to Plaintiff's averment, the ADB panels can, in fact, consider or construe constitutional principles in rendering decisions. Should the panel choose not to do so, at the very least, Plaintiff may raise his constitutional arguments on appeal to the Michigan and United States Supreme Courts, which is all that is required under *Thomas* and *Dayton Christian Schools*. The case law makes clear that this ability to apply constitutional principles, along with the possibility of judicial review, is sufficient to satisfy the final prong of the *Middlesex* analysis.

Having determined *Younger* applies, the court must discern whether Plaintiff's case falls within any recognized exception to *Younger*. Plaintiff invokes only the final exception by arguing "the rule at issue is flagrantly unconstitutional." (Pl.'s Reply 2.) The court's holding in *Thomas*, too, precludes this argument, as Plaintiff advances no reason why Rule 6.5(a) would be any more "flagrantly unconstitutional" than Rule 3.5(c). "In *Younger*, the Court determined that 'a "chilling effect," even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action.'" *Thomas*, 74 F.3d at 750 (quoting *Younger*, 401 U.S. at 51). Even if Rule 6.5(a) is unconstitutional, the court finds it is not flagrantly so.

Finally, Plaintiff's argument rooted in the Due Process Clause and in the Sixth Amendment—that he is unable to mount a defense to the "quasi-criminal" proceeding against him—is similarly subject to *Younger*. Plaintiff points to no authority, and the

court is aware of none, that would allow the court to enjoin a state proceeding on the ground that its procedures, rather than the underlying substantive law adjudicated in the proceeding, do not comport with a constitutional mandate. Indeed, a flavor of this argument was rejected in *Thomas*. *See* 74 F.3d at 743 ("[The plaintiff] also contended that the Michigan lawyer discipline system violates his right to procedural due process because it does not guarantee that his constitutional claims will be adjudicated."). *Younger* and its progeny hold a federal court may not enjoin a state proceeding, for any reason, where the three-part test is met, and none of the exceptions apply, as the court has found here. The court must therefore abstain. Plaintiff's recourse after a state hearing is with the Michigan Supreme Court and then, if need be, on certiorari to the United States Supreme Court. Accordingly,

IT IS ORDERED that Plaintiff's "Motion for . . . Preliminary Injunction" [Dkt. # 2] is DENIED.

IT IS FURTHER ORDERED that Defendants' "Motion to Dismiss" [Dkt. # 17] is GRANTED.

 s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: December 10, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 10, 2010, by electronic and/or ordinary mail.

                                                s/Lisa Wagner
                                                Case Manager and Deputy Clerk
                                                (313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\10-14145.BARKOVIC.Abstain.jmp.wpd

14